Thank you. Good afternoon, please be seated. Okay, our first case this afternoon is Doedtman v. Borreggine. Did I pronounce either of those names correctly? Borreggine. Borreggine? Borreggine. Borreggine. We have a 0-7 for and for the appellant we have Mr. William Hardy and for the appellate Brent Holmes. We'll be doing the argument, correct? Yes. Very well. Please proceed. May it please the court, counsel, my name is William Hardy. I represent the defendant's appellants in this case, Dr. Borreggine and his medical corporation. This is an appeal from a nearly $1.3 million jury verdict against Dr. Borreggine. We've raised several issues in our brief, but I'd like to spend the bulk of my time here during oral argument discussing the issue relating to Dr. Mercado and what we consider to be error in precluding defense counsel from cross-examining Dr. Mercado, the plaintiff's expert, regarding false testimony he gave in his discovery deposition. And this is a fairly unique case. I have been unable to locate any case quite like this in the civil context. And we think that the standard of review should be de novo because the trial judge in this case stated the reasons, the legal reasons, why he believed that this was a collateral matter that should not be the subject of cross-examination or any other evidence before the jury. The judge stated that Dr. Mercado may very well have perjured himself in the deposition, and that can be addressed criminally or professionally, but not to the detriment of the plaintiff by providing irrelevant evidence of a collateral matter to the jury. So in other words, and the judge reiterated those reasons when he ruled after the offer of proof. He said, I'm going to go back to my original ruling on that. So I don't think there's any question that Dr. Mercado did not tell the truth in his discovery deposition. And I don't say that lightly. I understand that that is a serious matter to say that an attorney and physician, an expert witness in the case, has lied under oath in his discovery deposition. But I would respectfully suggest to you, Your Honors, that on this record, that's the only conclusion that you can reach. Dr. Mercado was asked about this in the offer of proof, and he took the Fifth Amendment. Now, we've cited some cases in our brief that deal with experts testifying falsely, but I haven't been able to locate a case quite like this where an attorney and physician has taken the Fifth Amendment and stated that answering those questions, the same questions he was asking in his discovery deposition, would incriminate him. Go ahead. I was just going to ask you, Counsel, is this something that was really even subject to the Fifth Amendment privilege applying? I mean, why was this fellow allowed to take the Fifth on the questions that were asked in the offer of proof? Well, the judge told him he could take the Fifth. But, of course, he is an attorney. And my belief is that he took the Fifth Amendment because he testified falsely in his discovery deposition. Counsel, you know that in discovery depositions, there are many times where a witness will testify in one way and then at the time of trial will testify in a different way, hence the use of the discovery deposition as an impeachment tool. Are you indicating that this was such a rare occurrence where a witness testified differently at the time of trial or was subject to being impeached through an incorrect statement that warrants reversal of a jury verdict? I am suggesting that, and I'm suggesting it because it's not a collateral matter when he testifies to it in his discovery deposition where he's defending his opinions in the case. And he testified directly contrary to what he testified to in his discovery deposition. He said that the reason he left was personal and he went on to discuss his father. He denied that it had anything to do with grades or any cheating scandal or anything like that. He wasn't specifically asked about that, but we discovered that he lied about that in his deposition and we took the step to take Dr. Prime's deposition who was on the academic committee and he testified that without any objection, this is an evidence deposition mind you, where he's asked about this and he says he was on the academic committee and he was involved in a blatant cheating scandal and they recommended that he be expelled and he was allowed to transfer. Now let me tell you, let me go back to the discovery deposition and your question about that. Let's say that he had told the truth in his deposition about that. If he had said, look, I was accused of cheating on an examination, but I didn't do it. We're not going to litigate that issue, that's true. We're not. But the minute he lied about that, the minute that he, under oath, an attorney, testified falsely about that, that calls into question his opinions as an expert witness. Okay, so if Dr. Mercado in his discovery deposition was asked by you, did you file a tax return in 2012 and he says no or says yes and you have proof that he didn't, that would then be fair game at the time of trial? Aren't these the kinds of mini trials that judges are trying to avoid during cases like this where it's unrelated to the substance? Well, it's related to the substance because he's defending his opinions in this case. Okay, he's an expert witness. This is not like any of the cases that the plaintiff has cited where you're trying to impeach someone. We were never trying to prove that he cheated on an examination. What we wanted to show was that he lied about it in his discovery deposition. And that calls into question his, all of his opinions in my view. I mean, this, to answer your specific question, if he outright lied about it, that's a, I would still say as an attorney, as an attorney, if he's lying under oath about something, that's fair game. Now, that doesn't mean we perform a mini trial on it. All it means is that if he didn't file a tax return, then on cross-examination you get to bring that out. And it calls into question his credibility. We weren't allowed to do any of that. We weren't allowed to cross-examine him on it. We weren't allowed to present any evidence on it. And that's the difference here. And this particular testimony goes to his medical education. His medical education, on his resume, he did not include this Skoll College, which was one year of his education in podiatry. He didn't include it. He was questioned about it repeatedly, and he lied about it under oath. Now, he didn't have to do that. He did not have to do that. If I'm an expert witness, an attorney, a doctor, but particularly an attorney, where I'm giving opinions and I'm using that status as an attorney to bolster my opinions, as Dr. Mercado did in this case, then I darn well better tell the truth about that in my deposition. And the notion that he can just hide behind the Fifth Amendment is contrary to all notions of due process, in my view. Counsel, can we back up just a moment? Certainly. So you're very adamant that you established that Dr. Mercado actually lied at the deposition? I mean, to say that he left for personal reasons, is that a lie based on what we now know? It is a lie because we pinned a vow on that. He asked him what personal reasons, and he said it was because of his father. I mean, you have the recommendation of this committee that he be expelled, but we don't know whether or not that recommendation was accepted, right? So we don't know that he actually was required to leave the school because of this alleged cheating scandal. We don't know because he took the Fifth Amendment. A lawyer took the Fifth Amendment in a civil case and said, I'm not going to answer because it's going to incriminate me. There's only one conclusion you can reach from that, and that is that he doesn't want to tell the truth about it because he knows that he lied about it in his discovery deposition. Now, you know, discovery depositions are very liberal, as you know. You're entitled to get into a lot of things, okay? Now, let's say that he testified to that in his discovery deposition, all right? Let's say that he admitted it, and he said, yeah, I was involved in a cheating, or I was alleged to have been involved in a cheating scandal, and that's the reason why I left. But look, I didn't do it, or it's irrelevant, or we had an objection. If he said, I'm not going to answer that question because it has nothing to do with my opinions, then you have an in-camera inspection. He can go in, his counsel, he's a retained expert. The lawyer that hired him can go in and say to the judge, we want you to look at this and determine whether it's relevant. Then you're dealing with the situation in the cases that they're citing. But wasn't he asked at the discovery deposition whether or not he had to leave because of a cheating scandal? He was not asked specifically if he had to leave because of a cheating scandal. He was asked why he left, and we pinned him down on that. He tested, he said personal reasons, and then when he was asked about that, he blamed it on his father. He said, my father had to leave. He didn't say anything about that. Now, if, getting back to the discovery deposition, if he testified truthfully about it, then he could probe him on it. Defense counsel could have questioned him about it. He could have said, okay, well, tell me about that, and we could have developed discovery on that. He's an attorney. Did he disclose that on his professional? I'm not sure I understand there, though. Are you saying that it was insufficient, the discovery deposition questioning? Was there any request to go further than what had been done during the discovery deposition? No, because we didn't need it. We wanted to impeach him during his trial testimony, and if he denied it, then we would bring out the testimony of Dr. Prime. So you wanted to show that he was a liar, basically, that he lied at the deposition, and so then you wanted the jury to infer that he can't be trusted, basically. That's exactly right. And isn't that character evidence that is trying to be offered in a way that goes against Rule of Evidence 608? Not when you're talking about someone who testified falsely in a deposition. The character evidence rule. I mean, here's Rule 608. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations. The evidence may refer only to character for truthfulness or untruthfulness. Evidence of truthful character is admissible only after the character of witness for truthful has been attacked by opinion or reputation evidence or otherwise. That's a rule. So my point is you were trying to offer a specific incident of bad character versus an opinion or reputation. That's my point. That's what I'm asking you about. Well, I would respectfully disagree with you, Your Honor. What we were doing was introducing evidence that he lied about it in his discovery deposition, and that's different. That's quite different. If he had testified truthfully in his deposition and we had been allowed to explore that, then I think the judge, that would have been a discretionary determination for the judge because it's the same as these board examination cases where someone is asked, you know, let's say in their, the case that they relied upon is a case where the person testified truthfully that she didn't pass the board exam several times. And they brought out, well, that's, and on appeal they said, well, wait a minute. That's irrelevant. That's collateral. It wasn't a situation where they testified falsely about it in their discovery deposition. I would ask the court to consider, you know, as an attorney or as an expert, you know, there is nothing more important than the cross-examination process. This is not just about the plaintiff and the detriment to the plaintiff. This is a case where Dr. Borgini has been hit with a $1.3 million verdict, and it's based solely on the standard of care testimony of someone who, let's just say for purposes of argument, he lied under oath about the reason why he transferred. He lied under oath about that. The judge says that's a collateral matter that can be taken up criminally or professionally, but not to the detriment of the plaintiff. Well, I've never heard. Put aside the judge saying not to the detriment of the plaintiff. What if the judge had just simply said, look, we're not going to have a mini-trial on whether or not he lied about whether or not he cheated at podiatry school? Would you be making this same argument here? Yes. And the reason I would be making this argument is that we never asked for a mini-trial. All we wanted to do was question him about it and have him testify, and if he testified now that, yes, I did leave because of a cheating scandal, instead of taking the Fifth Amendment, okay, let's say he told the truth then at that point, and he said, no, to be honest with you, I left because I was accused of this. Well, then he's impeached with his discovery deposition where he obviously testifies differently, but we weren't even allowed to do that because he took the Fifth Amendment, and that creates an inference that he's testifying falsely. I question this legal ruling that basically says, look, just because he lied about what the judge determined was a collateral matter, it's irrelevant and not probative because he gave his opinions a couple of years before that when he reviewed the case. Well, if I'm an attorney, doctor, and I'm going to testify as an expert witness in a case, and I'm questioned about something in my discovery deposition, and I raise my hand and I say I'm going to tell the truth during this deposition, if somebody asks me, I mean, I wasn't involved in any cheating scandals, but let's say that I was, I'm darn well going to tell the truth about it. I'm not going to jeopardize my license. I'm certainly not going to perjure myself. And this is an attorney who touted himself as someone who prepared witnesses for trial, was involved in the ethical aspects of the law. He used that position to bolster his credibility. He even went to the point on direct to talk about his father, how I'm very, very, very, very, very fair because I don't want to tarnish my reputation or my family's reputation. Do you think he opened the door by saying some of these things that he did? Well, I think either way it comes in because he lied about it under oath. You know, if he had answered truthfully and not taken the Fifth Amendment, I mean, I have, look, all of you have practiced law. I know that criminally and civilly. I would venture to guess you've never run across a situation where an expert in this type of a case has lied about something like this in their discovery deposition. And then it comes up in this context because we don't want a mini-trial. We never wanted a mini-trial on this issue. The reason it became relevant is because he lied about it in his discovery deposition. And all we wanted to do was question him about it, let the jury decide, and then if he denied it, if he continued to maintain that, well, I mean, if he did not, then we would impeach him with his discovery deposition. But certainly it becomes relevant once he takes the Fifth Amendment, and we're not even allowed to bring out Dr. Prime's testimony, which is undisputed that he was involved in this cheating scandal. But, you know, getting back to his father, he uses his father to bolster his credibility. Yet in his discovery deposition he blames, he says that's the reason why he left. But we don't want to litigate that. All we want to do is point out that he testified falsely in his discovery deposition. And the notion that we... I keep coming back to why was he ever asked the question in the first place as to the reason he left Skoll University? He was asked about it because... I mean, to me that's collateral and completely irrelevant. And if I can't get past that hurdle, how do I even get to your argument you're making today? Well, he was asked about it because it was not on his resume. If you look at his testimony, and by the way, we included all of it in our appendix. If you look at his testimony, he was asked... On his resume he included all of his undergraduate, regardless of where he graduated from. He included only the Ohio College. He didn't include the Skoll College. And you'll see in the deposition where the defense counsel asked, were you aware that Dr. Borgeni was also a student there? So Dr. Borgeni knew that he was a student there. He didn't know anything else, but he knew he was a student there. So he was asked about why that wasn't on his resume. And that's when that discussion... They got into that discussion about that. And that's his medical education. And all he had to do was tell the truth about it. All he had to do was tell the truth. But he didn't do that. And that's the problem. This is the notion that he can take the Fifth Amendment... Again, this is an attorney. Getting back, if I'm going to be an expert and I'm going to raise my hand, I'm going to tell the truth about that. And if I don't, then the door is open to that. And the timing of all of this... We took that deposition a year and a half before... May I just conclude briefly? Yes. We took that deposition a year and a half before the motion in limine was filed. There were no objections to that. Then the motion in limine is filed right before trial, or shortly before trial. All plaintiff's counsel had to do was obtain a different expert. They knew what was coming. They knew we were going to raise that issue. But they didn't do that. And we should be allowed to explore that. I understand your reluctance. But I would just ask the court to look very carefully at those cases because none of them deal with the situation where someone, particularly an attorney, has lied under oath in a discovery deposition. I don't consider it a collateral matter when you have an expert who has testified the way he has in this case. It calls into question all of his opinions. The jury should have heard it. Okay, thank you. You'll have rebuttal. Mr. Holmes? May it please the court and counsel, my name is Brent Holmes. I have the privilege of representing Kyla Dateman in this appeal. We respectfully request that this court affirm the verdict of the jury. The trial court provided both sides with a fair trial. He acted conscientiously, and his rulings were appropriate. With regard to the granting of the plaintiff's first motion in limine, defendants suggest that the standard of review is de novo. It is not de novo. It is a question of whether or not the trial court engaged in a clear abuse of his sound discretion in ruling on the objection. And there is no suggestion, no indication that the judge clearly abused his sound discretion in this matter. Now when I read the defendant's opening brief, I was somewhat confused on this issue that's being raised. Because the defendant cited and quoted extensively from cases involving the question of does an expert, reach the threshold of being able to express an opinion in the case. And so they cited the Harrington case, which was one in which a new trial was granted for the plaintiff, because this expert who was a chiropractor also claimed to be a medical doctor. And it turned out that he had never had a medical license to practice medicine. In Flynn, that was a case in which, again, the question was did the expert reach the threshold? And this doctor, she had, or I'm sorry, the doctor had claimed that he had never taken the board certification boards, never taken the exam before, but he had recently, just recently taken the exam, was waiting for the results. And they were able to show that, in fact, he had taken the boards on at least two prior occasions and had failed them both times. In the reply brief, it became crystal clear what the issue that the defendants were raising. At page two of their reply brief, they quote from the statements that were made to Judge Glynn. And they say, this is not in the realm of those cases where the expert has attained the threshold to testify. So in other words, the cases involving threshold, the cases they cited in their opening brief, they're saying it's not applicable. Those decisions are not applicable. Why? Because they're telling us in their reply brief we're not challenging Dr. Mercado's credentials or whether he possesses the credentials that he claims to possess. He is licensed in Illinois as a podiatrist. He's board certified in podiatry. He has done hundreds or thousands of the same surgical procedures that Dr. Borghini performed, in this case, on Kyla. So they're not challenging him. So those cases don't even apply. So what do we get down to? We get down to they attempted to impeach Dr. Mercado on a collateral matter. And the court properly granted the motion in limine. This was an incident that happened some 30 years ago. And this Fourth District Appellate Court in Holm v. Zia, a decision authored by Justice Steigman, again, in a case, affirmed a trial court refusing to allow impeachment on a wholly collateral matter. And that was where the expert witness had apparently authored a report in favor of a patient, saying you've got a medical malpractice case. And I don't know why it took seven years, but seven years later, when it comes to trial, that same doctor testified in a case that there was no malpractice against the hospital. And they said, well, we ought to be able to bring this up. It shows that, you know, he's going to change his opinions. You know, he can't be trusted, et cetera, et cetera. And Justice Steigman correctly pointed out that this was on a collateral issue. We have brought out in our case the O'Brien v. Meyer case, which I think does kind of go into the issue of attempt at impeachment on collateral issues. Here, the doctor, she was licensed in Florida to practice medicine. It turned out that she had taken the Illinois examination four times and had never passed it. The appellate court said that was reversible error to let that cross-examination in because she had met the threshold. And what you're really doing is trying to bring up something collateral, something that happened prior to her becoming a licensed physician. Now, when we were in law school, at least what I recall from my evidence instructor was they drilled into us. They drilled into the students. You know, not every lie, not what you think is a lie, not every inconsistency that you are going to find, can you use it in a case. Cleary and Graham, when you pull up that book and you look under impeachment, collateral matters, If you recall, if you're old enough like me, I do recall the late Irving Younger, you know, the Ten Commandments of Cross-Examination, and he talked about the same issue. You are there at trial to prove the issue in the case, and in this case, did the defendant commit malpractice? If that's not what you're trying to prove through the cross-examination of the witness, it's collateral, and you can't pursue it. So, Dr. Mercado and his discovery deposition. You went to school the first year, yes? And you transferred to an Ohio, yes, I did. Why did you do that? Well, I did it for personal reasons. I mean, that's kind of the sum total of what you get out of the deposition. They never asked him, did you leave because you were engaged in a cheating scandal? You know, are you a cheater? Did you lie? What did you do? They didn't ask any of that. They later go and take a deposition of a Dr. Prime, who readily admitted he had no personal knowledge as to any of this. He sat on some kind of a credentialing or an academic committee, and apparently made a recommendation. He has no idea what became of it. So, on the state of this record, we have no idea that defendants cannot prove and tell us why this, whatever happened, whatever became of this claim, of this accusation. Isn't it their burden to do that? Well, how can they do that when the Fifth Amendment is taken? Well, that's because, as you correctly pointed out, when you are attempting to impeach on a collateral issue, you have to take the witness's answer as final. And that is in the People v. Kirkham case that we've cited. And, I absolutely agree with you, Justice Turner, the trial judge in this case would have been wholly justified in preventing the defendant from wasting the judge's time in the middle of the trial and having the jury sit back in the jury room while they're going through this so-called offer of proof. He told in his deposition that he left for personal reasons, and that answer is final and you can't impeach it. Why are we going through this charade at trial, going fishing and trying to say, well, let's come up with, let's find out what are the reasons why he left? Was he really telling the truth about that? And so, whether or not in this offer of proof, which the judge could have simply said, I don't need any offer of proof. It's collateral. I don't care what the reason is. It's collateral. You can't use it. So, it doesn't matter whether Dr. Mercado in this so-called offer of proof said, you know, this happened 30 years ago. I really don't remember the specifics of it. Or, he takes the Fifth Amendment and the judge said, well, you know, you can take the Fifth Amendment. And he felt he was being persecuted, so he takes the Fifth Amendment. Whatever his answer is or no answer, it's wholly immaterial. This is not admissible. Whatever he was going to say or not going to say was not going to be admissible. Let me give you a simple example. Let's say that in a deposition, a witness is asked clearly and concisely, have you ever been convicted of a felony or a misdemeanor involving dishonesty or false statement? And the witness says, no, I never have. Are you sure about that? Have you ever been convicted of a felony or a misdemeanor involving dishonesty or false statement? Oh, no. Oh, absolutely not. Never have. Never in my life. And so, you come to trial and counsel has a certified copy of a record of conviction in another jurisdiction showing that this witness pleaded guilty to a felony 25 years ago. Well, judge, I want to use this. Well, why? Why do you think you can use it? Well, he lied in his deposition. He said he's never been convicted of a felony. And look, he has been convicted of a felony. I can prove it. He's a liar. And the judge said, you know what? You may be right, but People v. Montgomery says you can't use it. It's more than 10 years old. It doesn't come in. We don't allow it. That's what we talk about when we talk about collateral issues. And so, we don't go down that side street. Like, the judge had a lot of patience here because most judges would have said, I don't need your offer proof. We don't need to hear from Dr. Mercado. We're not going to ask him any more questions about this at trial. Let's move on, counsel. You've already taken the deposition of this doctor prior. Is there anything else you want to offer in that regard? You have seven and a half months from the time I ruled before trial that this wasn't coming in. Do you have anything else to offer? Have you done anything else about this to change my mind? How can you change my mind? No matter what answer he gives, it's going to be collateral. You can't. You have to accept his answer as final. Now, there was some suggestion made here that, well, maybe Illinois rule of evidence 608. But, again, looking at the reply brief, they told us that that doesn't apply. And, again, quoting from counsel's statement at trial, the impeaching event was lying under oath in this case, and that's the difference. Rule 608 is the character witness rule. This is not about the doctor's character in general. So, they admit rule 608 doesn't apply. They didn't have any intention. The judge said, if you have some reputation evidence you want to come in to bring in with a witness to testify about his reputation for truth and veracity, you're welcome to do that. They didn't do that. And they know under rule 608, I think as Justice Holder White alluded to, rule 608 specifically states you cannot bring in an alleged specific incident, past incident, to try to prove bad reputation or veracity. It is barred under Illinois law. Even perjury? Yes. Unless you bring in a witness who says, you know what, I know Dr. Mercado personally, and I know of those who know of his reputation for truth and veracity. And can you testify under oath what that opinion is? Yes. And he would give that opinion. Yes, that could come in. But they didn't want to do that. And they apparently couldn't find any witness who would do that. So it doesn't come in under any circumstance. And in fact, any time you take a witness in a discovery deposition and that witness says something materially different from what you found out at deposition, at trial, you could say, well, that witness has committed perjury. But again, it doesn't come in if it's on a collateral issue. And this is exactly what the situation is here. The trial court was very patient. The court allowed him to do the offer of proof. And the court properly pointed out this offer of proof is insufficient. It is collateral to the issues at hand. And I suggest the only reason of questioning Dr. Mercado at trial was to embarrass and humiliate him and hopefully to deter him from ever, ever again being willing to agree to testify and review a case on behalf of a patient against a health care provider. And one final comment on this before I move on to the other issues. What if the shoe were on the other foot? What if we had had evidence or purported evidence that Dr. Borghini in this case had been engaged in an alleged, not proved, but an alleged cheating scandal that happened 30 years before this trial? And we wanted to bring that into evidence in this case. What do you think the defendant's response to that would have been? They would have taken umbrage at even the suggestion that we would have any right to do that. Well, let's take the example of the shoe truly being on the other foot. What if the trial judge here had allowed the proposed testimony, the proposed line of questioning on this issue? Abusive discretion still, right? That's what we'd be looking at if you were here as the appellant saying, hey, we lost this case because the trial judge allowed the defense to question Dr. Mercado about this irrelevant issue. It would have been an abuse of discretion, and I can assure you if there had been a defense verdict, we would have been up here in the appellate court claiming that the judge abused its discretion in allowing this to come in. It would be tremendously prejudicial. You don't have these many trials within a trial. This did not belong in the case, and the judge correctly ruled that he used his sound discretion in not allowing this case to devolve into some kind of, well, you know, what had really happened 30 years ago. And when you read this record, can you tell what did really happen 30 years ago? There is no indication. There is no solid. It's like you're trying to grab smoke, and they're saying they were entitled to do any and all of this on that record, and it's their obligation to present that record. You don't wait until trial, and it's already collateral. The judge already ruled it's collateral. It's a pretty dangerous practice to think, well, I'm going to put the witness up on offer proof and rely on the witness to give me what I'm looking for. Are you kidding me? The witness has no obligation or responsibility to do that, and we certainly, as plaintiff, had no obligation or responsibility to do anything with regard to the defendant on this issue. Now, with regard to the claimed Rule 213 violation, the trial court was in the best position to consider and rule upon the issues pertaining to Rule 213. And Dr. Mercado, in his 622 report, indicated that they shouldn't have performed surgery and that the defendant should have used orthotics. These are conservative measures. So when you look at the record, Dr. Mercado is testifying preliminarily, and he says, yes, I performed each of the surgeries that Dr. Borghini has performed, and also I treat patients with conservative management. And I'm familiar with that area of care and treatment. That's kind of a summary of what he was saying. And a hair trigger objection. Objection! This violates Rule 213. Well, of course it didn't violate Rule 213. We were laying the foundation that Dr. Mercado is familiar in his practice with not only the surgical procedures performed, but also with conservative approaches and management to the care and treatment of these conditions, of these foot conditions that were involved in this case. And that was exactly what he was talking about in his 622 and in his deposition and at trial. Was it in the context of testifying as to the standard of care? No, I don't even believe it was in that context. And I think the same could be true with the other issues they brought up with regard to the screwing. That was a fact in the case that the subsequent treater, Dr. Kilo, had in his records of the plaintiff. The screw appears to be too long and is impinging upon the sesamoid bones and causing pain. With regard to early weight bearing, those would be problems with pain because the screw is in place correctly and it's certainly consistent with Dr. Itosui, a subsequent treating orthopedic surgeon, who said, when she came into my care because of that placement, well, we say because of the placement of the screw, there was gross motion of the bones of the big toe. So these are all consistent. His opinions of deviations were as expressed in his 622 report and elaborated upon and corollaries to those opinions. The court, having heard all of this at trial and knowing what had gone on before trial and that trial says, I don't find that it is so far so inconsistent or so different from the opinions that have been disclosed to admit to a violation or calling for a mistrial. And then he went on and said, I will give you, defense counsel, latitude with your expert. There were no violations with regard to Rule 213 and certainly nothing that would be so seriously prejudicial as to deprive the defendant of a fair trial. I'd like to briefly mention with regard to the jury instructions, well, and I would say with regard to the issue of Rule 213, I believe the record is clear in closing argument. I don't believe there was one objection made during closing argument. What I'm pointing out is even if there was some issue that partly was maybe beyond the 213, it was not focused on, it wasn't elaborated on, it wasn't used in a way to tactically harm, punish, or prejudice the defendant throughout any of the rest of the trial and certainly not during closing argument. The jury was correctly and concisely instructed as to precisely the issues of negligence that were alleged in the complaint are contained in the 622 report. The court exercised its sound discretion in not addressing the objections based on Rule 213. With regard to the jury instructions, Plaintiff Instruction 19 was a non-IPI, but it was an issue in the case. No patient can consent to being malpracticed upon. And with regard to the consent forms, informed consent forms, those were front and center of the jury. The judge had given a limiting instruction when they came in and he felt it appropriate at the end of the case to make sure that the jury was again reminded that they couldn't go into the jury room and speculate that because she was told about all of these horrors that could happen as a result of care and treatment, that since she knew about all that, she can't recover from the defendants. That would have been a miscarriage of justice. And there's no suggestion that that instruction, which was concise, that that in any way misstated the law. It is a correct statement of the law. Thank you. Thank you, Mr. Holmes. Mr. Hardy, do you have a rebuttal? Yes, Your Honor. Thank you, counsel. Plaintiff's position is that it doesn't matter if he lied in his discovery deposition about that. It makes no difference. And I would submit to you that if Dr. Borregini was asked about that in his discovery deposition, if he had a similar situation where he was asked whether or not about his medical education and he lied about it, and then it came out later that that was a lie, you're darn right that they would try to bring that in. And they would bring it in, rightfully so. This perjury example, the felony, I haven't read that case. I know the law. Felonies don't come in if they're over 10 years old. But I'd love to brief that issue. If you want some case law on that, because I'd love to research it. If a plaintiff were to testify that clearly, if a defendant or anyone were to testify that clearly when asked about whether he had ever been convicted of a felony, and he said no, no, no, and then it comes out that he outright lied in his deposition about it, that goes to his credibility. Now, it's a different situation when there's no question about it. This is something that he was asked about in his discovery deposition, and he lied about it. That's all we wanted to do. We didn't want a mini-trial. This would have been a simple matter, and in the example that he's talking about there, would have been a simple matter of just letting it go to the jury. Make them answer the question. If he had testified truthfully about it, it wouldn't even be an issue. But the minute he lied about it under oath, it became an issue. The cases that we cited, I would ask you to look at those cases. In cases involving perjury where you have someone who has lied under oath, this kind of stuff does come in. But aren't those cases, cases involving their qualifications to even give the opinion that they're attempting to give? Some of them are. That's true. But they are also cases where someone has lied under oath, and it becomes relevant because of that. You're right. He's right. We're not questioning his qualifications. He's a medical doctor. He's a licensed physician. So is the dispute whether or not this is a collateral matter, is that really the dispute here? I would suggest that it's not a collateral matter. No, I understand you're saying that, but does it boil down to whether or not we find that it is a collateral matter? I believe that's basically true. If, let's say he wasn't questioned about that. Let's say Dr. Borgen wasn't questioned about it, and he wanted to come in and present evidence that, well, he was transferred from this school because of a cheating scandal. I would agree with you. The judge has discretion under those circumstances to say, look, that's a collateral matter. But if he's asked about it in his deposition as an attorney and expert, and he lies about it under oath, it's something that's fair game, period. If he had been asked, is your wife a good cook, and he said, yep, but it's objectively verifiable that she's terrible, that's perjury. That comes in. That's a completely different situation. Right. So we're talking about the quality of the lie, the gravity of the lie. Is that it? I think if you, you know, when you're asked, he keeps saying personal reasons. We addressed that in our reply brief. That's, it's pinned down as to why he left. Now, he lied about it. He lied about it, and I understand why he lied about it. He lied about it because he didn't want anybody to know. Well, if he's an expert witness, and he's going to testify under oath, then he has an obligation to tell the truth. And if he didn't want to answer the question because it was collateral, he shouldn't have, he should have said, look, it's personal. It's personal, and I'm not going to answer that question. But instead, he went on, and he lied about it. And then he took the Fifth Amendment at trial. It's a different situation. And I suggest to you that when somebody's credibility is at issue in a case like that, as an expert witness, and they lie about something that's not on their resume. One year of his medical school was at the Skoll College. It sounds like you're saying that we should make a special exception for expert witnesses that basically if they lie about anything, it automatically calls into question their opinion in the case, and they should be able to be impeached on that. Well, not necessarily anything, but you have to look at each case, obviously. And here we have an expert who is both an attorney and a medical physician and who touted his experience as a lawyer. But does that change the rule regarding impeachment on collateral matters? How does that make it different? It makes it different because he lied about it in his discovery deposition. If he wasn't asked about it. The collateral matter rule is all about people lying. I mean, it's about what lies can you impeach them regarding. No, I disagree with you, Your Honor. It's about trying to attack someone's credibility because of something they did in the past. It's not about when they testified falsely in a deposition. It's a different situation. I guess my point is this. The collateral matter rule basically states that it's collateral if it is not relevant to a material issue in the case. So you only get to impeach if it is relevant to a material issue in the case. And it sounds like to me you're saying that any time an expert lies, then it becomes relevant to a material issue in the case. I just can't reconcile that. Your Honor, I'm saying that each case has to be evaluated on its own facts. And when an expert witness, an attorney under these circumstances, lies about something like that in their discovery deposition, and it turns out that that's false.